DISTRICT COURT CASE NO. 3:19-cv-02095-RS

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

TSAI LUAN HO aka SHELBY HO,

Appellant,

v.

ANDREA A. WIRUM, CHAPTER 7 TRUSTEE,

Appellee.

On Appeal from the United States Bankruptcy Court for the Northern District of California, Bankr. Case No. 18-30581 -- Consolidated with Bankr. Case No. 18-30031, and Adv. Proc. Case No. 18-03051

The Honorable Dennis Montali, United States Bankruptcy Judge

## APPELLANT'S OPENING BRIEF

JAMES ANDREW HINDS, JR. (SBN 71222)
jhinds@jhindslaw.com
PAUL R. SHANKMAN (SBN 113608)
pshankman@jhindslaw.com
RACHEL M. SPOSATO (SBN 306045)
rsposato@jhindslaw.com
HINDS & SHANKMAN, LLP
21257 Hawthorne Blvd., Second Floor
Torrance, California 90503
Telephone: (310) 316-0500
Facsimile: (310) 792-5977

Attorneys for the Appellant, TSAI LUAN HO aka SHELBY HO

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, the

undersigned counsel for Appellant, TSAI LUAN HO aka SHELBY HO certifies

that TSAI LUAN HO aka SHELBY HO is an individual.


Dated: September 18, 2019          Respectfully submitted,

                                   JAMES ANDREW HINDS, JR.
                                   PAUL R. SHANKMAN
                                   RACHEL M. SPOSATO
                                   HINDS & SHANKMAN, LLP

                                   By:  /s/  James Andrew Hinds, Jr.
                                   JAMES ANDREW HINDS, JR.,
                                   Attorneys for the Appellant,
                                   TSAI LUAN HO aka SHELBY HO

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION………………………………………………………1

II.   SUMMARY OF BACKGROUND FACTS………………………………..2

   A.  The Appellant's Uncontested Asian Upbringing, Age, Education, Business
      Experiences, and Lack of Business Acumen Are Not Contested In The
      Record……………………………………………………………………2

   B.  The Appellant Is Introduced To Liberty Asset Management Corporation
      And Its Owners And Managers, Benny Kirk And Lucy Goa………………3

   C.  Appellant Files Her Own Chapter 7 Case To Address Her Liberty Related
      Financial Obligations……………………………………………………5

   D.  The Trustee Files A Complaint To Deny The Appellant A Discharged
      Based On The Appellant's Alleged Failure To Keep And Maintain
      Adequate Books And Records……………………………………………...8

III.  BANKRUPTCY COURT'S JURISDICTION…………………………...10

IV.  STATEMENT OF THE ISSUES………………………………………...10

V.   STANDARD OF REVIEW……………………………………………...11

VI.  ARGUMENT……………………………………………………………12

   A.  The Trial Court Was Required To Take Into Account The Background,
      Age, Upbringing, and Education Of The Appellant in Determining
      Discharge Under 11 U.S.C. § 727(a)(3)……………………….................12

   B.  The Court's And The Trustee's Reliance On *Caneva* is Misplaced Given
      The Clear Language In The Code and the Evidence Presented By The
      Appellant In Response To the Trustee's MSJ Below……………………..14

# TABLE OF CONTENTS

Page No.

C.  In Light Of The Strong Expert Testimony Presented At the Summary
Judgment Hearing, The Court Below Erred In Granting the Trustee
Summary Judgment Under Rule 56(a)…………………………………….23


D.  The Court Below Erred In Granting The Trustee Summary Judgment On
The Facts Presented By The Appellant In Opposition To The Trustee's
Motion for Summary Judgment………………………………………....23

VII.   CONCLUSION………………………………………………………….28

# TABLE OF AUTHORITIES

Page No.

**Cases**

Addisu v. Fred Meyer, Inc.,
    198 F.3d 1130 (9th Cir. 2000) ............................................................27

Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment,
    189 F.3d 1017 (9th Cir. 1999) .............................................................12

Andersen v. City of Bessamer City, N.C.,
    470 U.S. 564 (1985)............................................................................12

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986).................................................................... 18, 26

Beyene v. Coleman Sec. Servs., Inc.,
    854 F.2d 1179 (9th Cir. 1988................................................................27

British Airways Bd. v. Boeing Co.,
    585 F.2d 946 (9th Cir. 1978) ...............................................................18

Burchett v. Myers,
    202 F.2d 920 (9th Cir. 1953) ...............................................................19

Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva),
    550 F.3d 755 (9th Cir. 2008) ........................ 13, 14, 16, 18, 19, 20, 21, 22, 23, 24

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)............................................................................25

Chance v. Pac-Tel Teletrac Inc.,
    242 F.3d 1151, 1156 (9th Cir. 2001) ....................................................11

# TABLE OF AUTHORITIES

Page No.

Cases

Covey v. Hollydale Mobilehome Estates,
116 F.3d 830 (9th Cir. 1997) .................................................................23

Goodman v. Staples The Office Superstore, LLC,
644 F.3d 817 (9th Cir. 2011) ......................................................... 11, 12

Grange Mutual Ins. Co. v. Benningfield (In re Benningfield),
109 B.R. 291 (Bankr. S.D. Ohio 1989) ...............................................22

Henry v. Gill Indus., Inc.,
983 F.2d 943 (9th Cir. 1993) ...............................................................27

Industrie Aeronautiche v. Kasler (Matter of Kasler),
611 F.2d 308 (9th Cir. 1979) ...............................................................19

In re Hurley,
601 B.R. 529 (9th Cir. BAP 2019). .....................................................23

Lansdowne v. Cox (In re Cox),
41 F.3d 1294 (9th Cir. 1994) ........................................... 13, 16, 19, 21

Lies v. Farrell Lines, Inc.,
641 F.2d 765 (9th Cir. 1981) ...............................................................25

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,
475 U.S. 574 (1986)...................................................................... 25, 26

McSherry v. City of Long Beach,
584 F.3d 1129 (9th Cir. 2009) .............................................................18

## TABLE OF AUTHORITIES

Page No.

Cases

Moffett v. Union Bank,
    378 F.2d 10 (9th Cir. 1967) .......................................................... 16, 24

Mora v. Chem-Tronics,
    16 F. Supp. 2d 1192 (S.D. Cal. 1998).................................................25

Johnson v. Mammoth Recreations, Inc.,
    975 F.2d 604 (9th Cir. 1992) ...........................................................11

Olympic Coast Inv. v. Wright (In re Wright),
    364 B.R. 51 (Bankr. D. Mont. 2007) ....................................... 20, 21, 22

Orr v. Bank of America, NT & SA,
    285 F.3d 764 (9th Cir. 2002) ...........................................................27

Rhoades v. Wikle,
    453 F.2d 51 (9th Cir. 1971) ..............................................................19

Stevens v. Corelogic, Inc.,
    899 F.3d 666 (9th Cir. 2018) ............................................................11

Strzesynski v. Devaul (In re Devaul),
    318 B.R. 824 (Bankr. N.D. Ohio 2004)...............................................21

United States Tr. v. Hong Minh Tran (In re Hong Minh Tran), 4
    64 B.R. 885 (Bankr. S.D. Cal. 2012)....................................... 16, 17, 24

W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.,
    809 F.2d 626 (9th Cir. 1987) ............................................................27

# TABLE OF AUTHORITIES

Page No.

Cases

Wool v. Tandem Computers, Inc.,
   818 F.2d 1422 (9th Cir. 1987) ...........................................................................26

**Statutes**

11 U.S.C. § 727(a) ........................................................................... 2, 10, 28

11 U.S.C. § 727(a)(3).......... 1, 2, 5, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 22, 23, 28

28 U.S.C. § 151 ...............................................................................10

28 U.S.C. § 157 ...............................................................................10

28 U.S.C. § 158(a)(1)........................................................................10

28 U.S.C. § 1334 ..............................................................................10

Fed. R. Civ. P. 56 (a)........................................................................25

Fed. R. Civ. P. 56 (c)..................................................................... 25, 26

Fed R.  Civ. P. 56 (e)........................................................................26

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully submit that oral argument would add to a clear understanding of the issues on appeal in this matter.  The decision of the bankruptcy court below is not supported by the facts and misapplies the law and thus oral argument will materially assist this Court in its analysis of the disputed issues presented on appeal.

Dated: September 18, 2019          Respectfully submitted,

JAMES ANDREW HINDS, JR.
PAUL R. SHANKMAN
RACHEL M. SPOSATO
HINDS & SHANKMAN, LLP

By:  /s/  James Andrew Hinds, Jr.
JAMES ANDREW HINDS, JR.,
Attorneys for the Appellant,
TSAI LUAN HO aka SHELBY HO

# I.

## INTRODUCTION

The Appellant herein, TSAI LUAN HO aka SHELBY HO (hereinafter referred to as the "Appellant") files this appeal from the entry of an Order of the United States Bankruptcy Court for the Northern District of California denying the Appellant her chapter 7 discharge under 11 U.S.C. § 727(a)(3).  As noted to the Bankruptcy Court, the Appellant's defense to the charge that she failed to keep and maintain adequate business records was the Appellant's uncontested assertion that her cultural and educational background never prepared the Appellant to record here dealings with her friends and family members and her dealings with Liberty Asset Management Company and its officers and owners who engaged in a notorious Ponzi Scheme.  What this case boils down to, then, is whether the court below erred in failing to accept Ho's explanation of her pre-petition bookkeeping efforts in light of her culture, education, and business experiences with Liberty Asset Management Company and its officers and owners who engaged in a notorious Ponzi scheme.

The Bankruptcy Court below completely ignored the undisputed expert testimony submitted by the Appellant in support of her claims of cultural and educational exceptionalism under the facts of this case.  What is clear is that the Code does not require perfection in record keeping under § 727(a)(3) and that the

1

circumstances must be considered in a draconian decision to deny a discharge to an honest debtor.  Here the Appellant offered the Trustee unfettered review of her personal papers developed pre- and post-petition to document her personal business dealings.  The Trustee refused the opportunity to review the Appellant's documents.

By this appeal, the Appellant requests that the Order denying the Appellant's discharge under 11 U.S.C. § 727(a)(3) be overruled and vacated, and that the Order be reversed and the case remanded to the bankruptcy court with instructions to allow the Appellant's discharge under 11 U.S.C. § 727(a).

## II.

### SUMMARY OF BACKGROUND FACTS

A. The Appellant's Uncontested Asian Upbringing, Age, Education, Business Experiences, and Lack of Business Acumen Are Not Contested In The Record.

As established to the bankruptcy court below, the Appellant is a 70-year old Asian woman whose first language is not English.  Appellant was born and educated in Taiwan, and moved to the United States with her husband in 1976.  Appellant and her husband settled in the San Jose area where her husband operated a computer hardware business.  Appellant was not active in the computer hardware

business operated by her husband.  The Appellant's husband passed away in 1994 and the Appellant withdrew from the computer hardware business to raise her three boys as a stay-at-home mom.  [Appellant's ER at Tab 20 Ho Declaration ¶¶ 4-8.]

After years as a stay-at-home mom, late in life, Appellant obtained her real estate broker's license.  Due in part to her excellent Chinese language skills and her knowledge of Chinese culture, the Appellant was initially successful in working with Chinese buyers seeking to acquire or develop real estate in Northern California.  As to most of these real estate deals Appellant earned a broker's commission for her efforts.  [Appellant's ER at Tab 20 Ho Declaration ¶¶ 4-8.]

B. <u>The Appellant Is Introduced To Liberty Asset Management Corporation And Its Owners And Managers, Benny Kirk And Lucy Goa</u>.

After developing a level of success in working with Chinese clients, the Appellant was introduced to Benny Kirk (hereinafter referred to "Kirk") who was the face of Liberty Assert Management Corporation (hereinafter referred to as "Liberty").  Appellant agreed to introduce her Chinese clients to Liberty so that Liberty and Kirk could entice her Chinese clients in real estate deals conceived by Liberty and Kirk.  What Appellant did not learn until months later was that Liberty and Kirk were engaged in a massive Ponzi scheme whereby investors (some introduced by the Appellant) to Liberty and Kirk were used to perpetrate in a fake real estate business and alleged to invest in distressed real estate.  However, to be

clear, the record below showed that the Appellant had <u>nothing to do with the</u> <u>collection of investors' funds, the investment of investor funds, and/or</u> <u>documentation of investor transactions with Liberty</u>.  [Appellant's ER at Tab 20 Ho Declaration ¶¶ 9-20.]

Liberty's Ponzi scheme unraveled and Liberty failed.  Liberty filed a chapter 11 case in the Central District of California.  (Case No. 2:16-bk-13575-ER.) Liberty's owners and managers were accused by the Liberty Creditors' Committee of engaging is the destruction of business records for Liberty.  The Creditors' Committee obtained Judgments against Benny Kirk and Lucy Goa based on their pre- and post-Petition mismanagement and unlawful conduct.

A number of Appellant's Chinese clients who had invested in Liberty lost money.  At the same time Appellant was cheated out of her compensation for deals Liberty closed with Appellant's Chinese clients.  In an effort to save some of her Chinese clients' final losses, Appellant engaged in transactions with Kirk, Goa, and Liberty designed to obtain some return to her Chinese clients.  In order to cut her own losses with Liberty, Appellant engaged in two transactions with Liberty whereby Appellant received title to two properties in Northern California. However at the end of the day neither of these two properties had substantial

equity and both were placed into chapter 7 cases[1] and the real property liquidated by order of the bankruptcy court.  The net sales proceeds of the liquidation of these two properties were deposited with Appellant's chapter 7 Trustee pursuant to court order.  [Appellant's ER at Tab 20 Ho Declaration ¶¶ 28 and 40.]

C. <u>Appellant Files Her Own Chapter 7 Case To Address Her Liberty Related Financial Obligations</u>.

On or about May 28, 2018, the Appellant filed a voluntary petition for relief under chapter 7.  A copy of the petition is attached to the Appellant's Excerpts of Record ("Appellant's ER") at Tab 7.  On or about August 23, 2018, the Trustee filed an adversary proceeding against the Appellant under 11 U.S.C. § 727(a)(3) and (5).  [Appellant's ER at Tab 5.]  Appellant's Trustee sued Appellant under § 727(a)(3) seeking to deny Appellant a discharge due to her poor record keeping. Several of her former friends who successfully profited from deals with Liberty also sued Appellant.  Hence, as argued to the court below, Appellant is as much a victim of the scam practiced upon Appellant's Chinese clients by Liberty as are her Chinese clients.

Prior to filing her own chapter 7 case, the Appellant filed chapter 11 cases for *Big Max* and *Great Vista*.  The purpose of the *Big Max* and *Great Vista* cases

---

[1]      See *In re Big Max, LLC*, Case No. 18-bk-30031-DM and *In re Great Vista Real Estate Investment Corporation*, Case No. 18-bk-30032-DM.

was to use the automatic stay to stop a pending foreclosure and to allow *Big Max* and *Great Vista* to liquidate the real property in both Estates.  The entire process of liquidating the real property in both Estates was overseen by Judge Montali, subject to due process and notice to all creditors of the Appellant and *Big Max* and *Great Vista*.  After the sales were complete, *Big Max* and *Great Vista* were converted to chapter 7 and *Big Max* was consolidated with the Appellant's chapter 7 case for final administration.  [Appellant's ER at Tab 16.]

As part of the *Big Max* and *Great Vista* cases the Appellant sat for § 341(a) meetings before the United States Trustee.  As part of Appellant's chapter 7 case, the Appellant sat for at least two-full sessions with the Trustee and her counsel and answered, to the best of her ability, all questions put to her by the Trustee and other parties-in-interest.  [Appellant's ER at Tab 20 Ho Declaration ¶¶ 63-71.]  As part of the examination of the Appellant the Trustees requested and were provided with documents retained by *Big Max*, *Great Vista*, and the Appellant or otherwise generated by the Appellant and her assistant, documenting the Appellant's pre-petition business activities.  [Appellant's ER at Tab 20 Wirum Declaration ¶5.]  A substantial portion of the documents supplied to the Trustee related to the Appellant's defense of claims made by the Official Committee of Creditors (hereinafter referred to as the "OCC") in the Liberty Asset Management Case

pending before the United States Bankruptcy Court in Los Angeles.  [Appellant's ER at Tab 20 Ho Declaration ¶¶ 63-71.]

Discovery in the Los Angeles Adversary Proceeding brought by the Liberty Committee against the Appellant had been substantially completed before the Appellant filed her personal chapter 7 case.  The Appellant offered to share with the Trustee the fruits of the Los Angeles Adversary Proceeding discovery which showed how money was raised and accounted for by Liberty, how investors' contracts where prepared and distributed by Liberty, and that the Appellant had no role in the collection of money, designation of third-party investments, the documentation of third-party investments, or management of the Liberty real property asset portfolio.  [Appellant's ER at Tab 20 Ho Declaration ¶¶ 51-60.]

In addition to the wealth of data generated as part of the OCC's Los Angeles Adversary Proceeding, the Appellant and her counsel offered to, and in fact provided the Trustee with additional documents bearing on money raised by the Debtor from third-parties pre-petition and used primarily to pay her personal living expenses.  These offers were well documented and summarily rejected by the Trustee and her counsel.  [Appellant's ER at Tab 20 Ho Declaration ¶¶ 67-71, Tab 22 Arima Declaration ¶¶ 16-19 and Tab 19 Wirum Declaration ¶¶5-6.]  In fact, the Trustee never met with the Appellant and never reviewed the supplemental data collected in response to the Trustee's request for additional documentation.  The

Appellant conceded to the Trustee during discovery that she was not a good record keeper.  However, the Appellant also believed and represented to the Trustee that the documents she had been able to compile on her pre-petition business dealings would meet the requirements of the Bankruptcy Code and support her discharge as an honest debtor.  [Appellant's ER at Tab 20 Ho Declaration ¶¶ 63-71.]

D.   <u>The Trustee Files A Complaint To Deny The Appellant A Discharged Based On The Appellant's Alleged Failure To Keep And Maintain Adequate Books And Records</u>.

In the Complaint, the Trustee alleged two claims for relief for denial of discharge based on the Appellant's alleged failures to keep, produce, and/or preserve books and records for the Trustee's review.  [Appellant's ER at Tab 5.] On or about December 21, 2018, the Trustee filed her Motion for Summary Judgment (hereinafter referred to as the "MSJ") [Adv. Proc. Docket No. 19].  On or about January 4, 2019, the Appellant filed her Opposition to the MSJ. [Appellant's ER at Tab 21.]  As part of the Appellant's Opposition the Debtor filed the Expert Declaration of Monica Yeung Arima.  [Appellant's ER at Tab 22.]  The unchallenged Arima Declaration placed in context the Appellant's age, education, cultural background, and pre-petition circumstances to explain why the Appellant's efforts to document her pre-petition actions were reasonable under the circumstances of this case.

8

Of equal import, the Appellant explained to the court below and the Trustee that she did have and did produce to the Trustee bank records, handwritten notes of transactions with friends and family members, records complied by the Committee in the Liberty case of the Appellant's pre-petition dealings with Liberty which resulted in the acquisition of the Big Max and Great Vista properties.  [Appellant's ER at Tab 20 and 22 Ho Declaration ¶¶ 61-72.]  Hence, this was not a case where the debtor failed to keep and maintain any records.  Rather, the core issue below was the adequacy of the Appellant's books and records.

The MSJ came on for hearing on or about January 18, 2019.  Over the arguments of the Appellant, part of the Trustee's MSJ was granted even though the Trustee was failed to challenge or counter the unchallenged Arima Declaration or explain why she and her counsel refused to meet with the Debtor to review and explain the documents supplied to the Trustee.  [Appellant's ER at Tab 27 Transcript at pp. 9-11.]

On or about April 1, 2019, the bankruptcy court entered its Memorandum Decision regarding the MSJ (hereinafter referred to as the "Order").  [Appellant's ER at Tab 4.]  The Order granted partial summary judgment in favor of the Trustee, and ultimately denied the Appellant a right to a discharge.  [Appellant's ER at Tab 4.]  On or about April 16, 2019, the Debtor filed her Notice of Appeal and Statement of Election.  [Appellant's ER at Tab 1.]

## III.

## BANKRUPTCY COURT'S JURISDICTION

The United States Bankruptcy Court for the Northern District of California (the Honorable Denis Montali, United States Bankruptcy Judge) had jurisdiction over the underlying issues proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334 and 11 U.S.C. § 727(a). This Court has jurisdiction to hear this appeal from the bankruptcy court's final order under 28 U.S.C. § 158(a)(1).

## IV.

## STATEMENT OF THE ISSUES

1.     Whether the bankruptcy court erred in finding that the showing made by the Appellant in response to the Trustee MSJ, and in particular the unopposed Expert Declaration of Monica Yeung Arima showing that the Appellant's pre-petition record keeping was adequate under 11 U.S.C. § 727(a)(3)?

2.     Whether the Honorable Dennis Montali abused his discretion by ignoring the unopposed Expert Declaration of Monica Yeung Arima showing that the Appellant's pre-petition record keeping was adequate under 11 U.S.C. § 727(a)(3) based on her age, education, cultural background, and pre-petition circumstances?

3.     Whether the Honorable Dennis Montali abused his discretion by failing to consider, rule upon, and grant the Appellant's Motion to Strike Portions of the Appellee's Declarations in support of the Motion for Partial Summary Judgment?

4.     Whether the Honorable Dennis Montali erred by granting the Trustee Summary Judgment in light of the showing made by the Appellant in opposition thereto?

5.     Whether as a matter of law the bankruptcy court is required to consider the circumstances of the Appellant such as the Appellant's age, education, cultural background, and pre-petition circumstances to explain why the Appellant's efforts to document her pre-petition business activities were reasonable under the circumstances of this case and not a violation of 11 U.S.C. § 727(a)(3)?

## V.

## STANDARD OF REVIEW

This Court is required to review the trial court's grant of summary judgment *de novo*.  See *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1156 (9th Cir. 2001).  This Court is required to review the remaining decisions challenged on appeal for abuse of discretion.  See *id.* at 1161 n.6; *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992); *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 677 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1222 (2019); *Goodman*

*v. Staples The Office Superstore, LLC*, 644 F.3d 817, 822 (9th Cir. 2011).  A

bankruptcy court's conclusions of law are reviewed de novo.  *See Feder v. Lazar*

*(In re Lazar)*, 83 F.3d 306, 308 (9th Cir. 1996).  A lower court's findings of fact

after a bench trial are reviewed for clear error.  *See Ambassador Hotel Co., Ltd. v.*

*Wei-Chuan Investment*, 189 F.3d 1017, 1024 (9th Cir. 1999)(citations omitted).

Clear error occurs when "'although there is evidence to support it, the reviewing

court on the entire evidence is left with the definite and firm conviction that a

mistake has been committed.'"  *Andersen v. City of Bessamer City, N.C.*, 470 U.S.

564, 573 (1985)(quoting *United States v. United States Gypsum Co.*, 333 U.S. 364,

395 (1948)).

## VI.

## ARGUMENT

A.   <u>The Trial Court Was Required To Take Into Account The Background,</u>

<u>Age, Upbringing, and Education Of The Appellant in Determining</u>

<u>Discharge Under 11 U.S.C. § 727(a)(3).</u>

Section 727(a)(3) provides, in relevant part, that a debtor is not entitled to a

discharge if she fails "to keep or preserve any recorded information, including

books, documents, records, and papers, from which the debtor's financial condition

or business transactions might be ascertained, unless such act or failure to act was

12

justified under all of the circumstances of the case." To succeed on its objection to discharge under § 727(a)(3), the trustee must show "'(1) that [Appellant] failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain [Ho's] financial condition and material business transactions.'" *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1296 (9th Cir. 1994) (*quoting Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992)). Adequate records should enable creditors to follow a debtor's transactions "for a reasonable period in the past." *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008) (*quoting Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971)).

Below, the Trustee argued that Appellant admitted that she kept few financial records related to her operation of Great Vista and Big Max and failed to maintain records for her loans to Liberty and Kirk in the three years prior to Ho's chapter 7 filing. This was not her custom and she was not trained in bookkeeping. The Trustee also argued that the Appellant could not produce records pertaining to money into and out of her two pre-petition bank accounts. In response, Appellant admitted that due to her age, lack of English language training, cultural background and upbringing, education, and circumstances, she had never been trained in bookkeeping, and never engaged in business, had for the past several years been a stay-at-home mother to her three sons, and had been a victim of the

13

Liberty Ponzi scheme like many of her Chinese clients. [Appellant's ER at Tab 20 Ho Declaration ¶¶ 61-72.]

In addition, the Appellant admitted into evidence in response to the Trustee's MSJ the Expert Declaration of Monica Yeung Arima. [Appellant's ER at Tab 22.] The unchallenged Arima Declaration placed in context the Appellant's age, education, cultural background, and pre-petition circumstances to explain why the Appellant's efforts to document her pre-petition actions were reasonable under the circumstances of this case. The Trustee failed to move to strike the Arima Declaration or to challenge the well-reasoned conclusions contained in the Arima Declaration and for this reason alone the Trustee's MSJ should be overturned.

B. <u>The Court's And The Trustee's Reliance On *Caneva* is Misplaced Given The Clear Language In The Code and the Evidence Presented By The Appellant In Response To the Trustee's MSJ Below</u>.

In support of her MSJ the Trustee cited to *Caneva* in support for her argument that the Appellant's bookkeeping was insufficient under § 727(a)(3) to allow the Appellant to received her discharge in her chapter 7 case. At the hearing on the MSJ, the judge also cited to *Caneva* as controlling case law in the Ninth Circuit. [Appellant's ER at Tab 27 Transcript at pp. 8-10.] The Appellant asserts that *Caneva* must be read to allow the court below to consider all of the

14

circumstances underlying the debtor's pre-petition conduct in ruling on the Trustee's § 727(a)(3) assertion to deny the Appellant her chapter 7 discharge.

As noted herein, the burden is on the Trustee to show both that the Appellant failed to maintain and preserve adequate records and that such failure made it impossible to ascertain debtor's financial condition and material transactions. Establishing inadequacy of the records will turn on evidence of what information has and has not been turned over as well as evidence of what information should be in debtor's files given her business.  By way of example, the Trustee failed to produce any evidence below as to what documents should be kept by a debtor under the circumstances in which the Appellant did business, including what documents one would expect to exist for a person of the Appellant's age, education, cultural background, and experience.  There was no testimony in support of the MSJ that the Appellant was required to have prepared a personal financial statement for every year, a reconciliation of the Chinese investors' money into Liberty, or that it was unusual that an individual in her circumstances would only have handwritten notes of her personal borrowings and transactions with friends and family.

Section 727(a)(3) provides, in relevant part, that a debtor is not entitled to a discharge if he fails "to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition

or business transactions might be ascertained, <u>unless such act or failure to act was justified under all of the circumstances of the case.</u>"  (Emphasis added.)  To succeed on her objection to discharge under § 727(a)(3), the Trustee was thus required to show "'(1) that [the Appellant] failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain [the Appellant's] financial condition and material business transactions.'"  *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1296 (9th Cir. 1994) (*quoting Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992)).

Adequate records should enable creditors to follow a debtor's transactions "for a reasonable period in the past."  *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008) (*quoting Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971)).  A debtor must only "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past."  *In re Caneva*, 550 F.3d at 761.  A debtor's "duty to keep records is measured by what is necessary to ascertain [his] financial status."  *Moffett v. Union Bank*, 378 F.2d 10, 11 (9th Cir. 1967); *see also United States Tr. v. Hong Minh Tran (In re Hong Minh Tran)*, 464 B.R. 885, 893 (Bankr. S.D. Cal. 2012) (type of debtor, as well as debtor's sophistication, informs the bankruptcy court's determination).

16

The reasoning of the court in *Hong Minh Tran* is instructive on the issues raised by the Appellant.  In *Hong Minh Tran*, the court stated:

> In evaluating the reasonableness of records, the Court must undertake a case by case determination. The records required for a business, as opposed to those required for a person in the conduct of day-to-day life, may be entirely different.  <u>And the Court should take into consideration the sophistication of the debtor and the type of transactions in which the debtor engaged.</u>  <u>For the average person, who is not engaged in sophisticated financial transactions and, instead, acts only as a consumer, tax records, wage records, bank records and credit card records may suffice.</u>

*Id.* (emphasis added).   Unlike in this case, the debtor in *Hong Minh Tran* failed to maintain any records of his gambling losses or to explain his use of credit card advances to finance his gambling habit.  *Id.*   The record below shows that the Appellant provided the Trustee with records regarding her transactions with Liberty as well as her bank statements and hand written notes of transactions with friends and family.  [Appellant's ER at Tab 20 Ho Declaration ¶¶ 61-72.]

Below the Trustee argued that the Appellant admitted that she kept few financial records related to her operation of Great Vista and Big Max and failed to maintain records for her loans to Liberty and Kirk in the three-years prior to Ho's chapter 7 filing.  The Trustee also argued that Ho could not produce records pertaining to money into and out of her two pre-petition bank accounts.  To find in the Trustee's favor on her § 727(a)(3) claims required the judge below to accept the Trustee's argument as fact and make inferences and credibility determinations in the Trustee's favor – <u>none of which is appropriate on summary judgment</u>.  See

17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (all justifiable inferences must be drawn in favor of the non-moving party); *Oswalt v. Resolute Indus.*, 642 F.3d at 861 (credibility determinations, weighing of evidence, and the drawing of legitimate inferences from the facts are inappropriate on summary judgment); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("Legal memoranda and oral argument are not evidence").  And, the nonmovant's "evidence is to be believed."  *McSherry v. City of Long Beach*, 584 F.3d 1129, 1133 (9th Cir. 2009).

      The facts of *Caneva* are not similar to the facts of this case.  In *Caneva* the debtor revealed an interest in about fifteen business entities, stating that the extent was unknown.  He admitted that he kept no financial records for any of these entities although they were either operating businesses or were holding companies for operating businesses.  Debtor also had paid a $500,000 brokerage fee for a loan that he stated that he did not receive, though he admitted that he had no documentation to support this.

      Citing to its previous decisions on §727(a)(3), the Ninth Circuit reiterated that:

> the purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs.  *Cox*, 41 F.3d at 1296 (citation omitted).  The disclosure requirement removes the risk to creditors of "the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records."  *Burchett v. Myers*, 202 F.2d

920, 926 (9th Cir. 1953).  The statute does not require absolute completeness in making or keeping records.  *Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971).  Rather, the debtor must "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." *Id.*  This exception to dischargeability, however, "should be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start." *Industrie Aeronautiche v. Kasler (Matter of Kasler)*, 611 F.2d 308, 310 (9th Cir. 1979) (citation omitted).

*Caneva*, 550 F.3d at 761 (emphasis added).

The issue of the adequacy of Mr. Caneva's record-keeping arose (as in this case) on the trustee's motion for summary judgment.  Because *Caneva* was in the context of a motion for summary judgment, the issue was whether there is a triable issue of fact, not whether the Plaintiff put on a prima facie case.  The Ninth Circuit disagreed with Mr. Caneva's explanation of his records following the Seventh Circuit holding that § 727(a)(3) "places an affirmative duty on the debtor to create books and records accurately documenting his business affairs." *Caneva*, 550 F.3d at 762 (*quoting Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999). The Ninth Circuit also agreed with *Peterson* that "when a debtor is sophisticated and carries on a business involving substantial assets, 'creditors have an expectation of greater and better record keeping.' *Id.* (again *citing Peterson*, 172 F.3d at 970, which cited *In re Juzwiak*, 89 F.3d 424, 428 (7th Cir. 1996).

Unlike in *Caneva*, here the Appellant had some books and records on her personal pre-petition dealings and make substantial documents related to her dealings with Liberty openly available to the Trustee.  Moreover, the Appellant established her level of sophistication by reference to her education, age, and cultural background.  [Appellant's ER at Tab 20 Ho Declaration ¶¶ 61-72 and the Arima Declaration ¶¶ 8-19.]  Hence, the facts of this case differ materially from the facts of *Caneva* where the debtor admitted that he did <u>not</u> have books and records to reflect his pre-petition dealings.

The Appellant believes that the case which is closer to the fact of this case is *Olympic Coast Inv. v. Wright (In re Wright)*, 364 B.R. 51, 69 (Bankr. D. Mont. 2007), *aff'd*, 2008 U.S. Dist. LEXIS 3347 (D. Mont. Jan. 15, 2008), *aff'd*, 340 Fed. Appx. 422 (9th Cir. 2009).  In *Olympic Coast*, the debtors turned over fifteen file cabinets of documents and the creditor's counsel went through them for a day and a half.  At the § 727(a)(3) trial the plaintiff offered no qualified expert accountant or any other witness to testify as to what was in the records that were turned over or what sort of records should be in the debtors' files given the nature of the debtors' business transactions.  Rather, here the Trustee on her own and without any qualification opined that she could not reconstruct the Debtor's financial affairs from what the Appellant had provided.  [Appellant's ER at Tab 19 Wirum

Declaration, ¶28.]  On a motion for summary judgment is showing is, on its face, insufficient.

To be clear, in *Olympic Coast,* unlike *Caneva* where the debtor testified that he had no records, in *Olympic Coast* the debtors testified that they kept everything and allowed the plaintiff access for review.  Plaintiff proffered no testimony that it completed that review or what it found.  Based upon the debtors' voluminous business records, and creditors' failure to offer testimony by expert witnesses as was offered in *Juzwiak*, the trial court concludes that the creditors failed to satisfy the first *Cox* requirement that the debtors failed to maintain and preserve adequate business records.  Given that failure it is not necessary to consider the second *Cox* factor -- whether such failure makes it impossible to ascertain the debtors' financial condition and material business transactions, and the burden of proof does not shift to the debtors to justify the inadequacy or nonexistence of the records.  *Olympic Coast*, 364 B.R. at 70, *citing Cox*, 41 F.3d at 1296.

*Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824, 830-34 (Bankr. N.D. Ohio 2004), *reconsid. denied,* 2004 Bankr. LEXIS 2127 (Bankr. N.D. Ohio Nov. 24, 2004), sets forth an excellent analysis of the division of responsibility between the plaintiff who wishes to deny the debtor a discharge under § 727(a)(3) and the debtor who seeks a discharge.  *Devaul* sets the following as the standard for the Plaintiff to meet its requirements under § 727(a)(3):

Accordingly, to meet the initial burden under § 727(a)(3), the creditor must first offer evidence of the general nature of Debtor's business or personal financial position (*e.g.* consumer, business relationships and interests, general nature of business interests and sources of income) and the types of transactions about which recorded information is sought. . . . Second, the plaintiff must present evidence identifying for the court, on summary judgment or at trial, what recorded information it alleges has been concealed, destroyed, mutilated, falsified, or not kept or preserved by a debtor. . . .

Third, the plaintiff must show how the missing recorded information "might" enable a particular debtor's actual financial condition or business transactions to be ascertained under the circumstances of the case, which is the ultimate connection between the first two elements of proof.  See *Grange Mutual Ins. Co. v. Benningfield (In re Benningfield)*, 109 B.R. 291, 293 (Bankr. S.D. Ohio 1989)("The requirement in § 727(a)(3)…includes as a necessary assumption, that any records which have not been kept have possible material relevance to his financial condition.").  In some cases, this may require opinion testimony by lay witnesses, Fed. R. Evid. 701, or qualified expert witnesses, Fed. R. Evid. 702.  In others, the simplicity of the debtor's circumstances and the nature of the missing recorded information may be so basic as to allow the court to otherwise draw the conclusion on its own that the missing records are inherently such that one "might" be able to ascertain a debtor's financial condition or business transactions from them.

*Id.* at 833-4.

Here, the record from below shows that the Appellant provided the Trustee with substantial documentation in this case, including her tax returns, copies of her bank statements, copies of her hand written notes of personal borrowings, etc. [Appellant's ER at Tab 20 Ho Declaration ¶¶ 61-72 and Tab 22 Arima Declaration ¶¶ 16-19.]  The Trustee admitted no evidence by an expert or percipient witness testimony to rebut that assertion that the Appellant gave the Trustee all of her

documents on her involvement with Liberty and offered access to all of her documentation on her other pre-petition business dealings.

C.   <u>In Light Of The Strong Expert Testimony Presented At the Summary Judgment Hearing, The Court Below Erred In Granting the Trustee Summary Judgment Under Rule 56(a)</u> .

Summary judgment should be granted when there are no genuine issues of material fact and when the movant is entitled to prevail as a matter of law.  Rule 56(a) (made applicable in adversary proceedings by Rule 7056).  In resolving a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial.  *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997).  A material fact is one that, "under the governing substantive law . . . could affect the outcome of the case."  *Caneva*, *supra*, 550 F.3d at 760.  "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 761 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  At the hearing below, the Appellant vigorously argued that the Trustee could not meet the Rile 7056 standard based on the showing presented in opposition to the MSJ.  *In re Hurley*, 601 B.R. 529, 534 (9th Cir. BAP 2019).

A debtor must only "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow

his business transactions for a reasonable period in the past." *In re Caneva*, 550 F.3d at 761.  A debtor's "duty to keep records is measured by what is necessary to ascertain [his] financial status." *Moffett v. Union Bank*, 378 F.2d 10, 11 (9th Cir. 1967); *see also United States Tr. v. Hong Minh Tran (In re Hong Minh Tran)*, 464 B.R. 885, 893 (Bankr. S.D. Cal. 2012) (type of debtor, as well as debtor's sophistication, informs the bankruptcy court's determination).

D.   <u>The Court Below Erred In Granting The Trustee Summary Judgment On The Facts Presented By The Appellant In Opposition To The Trustee's Motion for Summary Judgment</u>.

As the record shows, in response to the Trustee's motion for summary judgment the Appellant filed declarations from herself and from her expert witness Monica Yeung Arima.  [Appellant's ER at Tab 20 Ho Declaration and Tab 20 Arima Declaration.]  The Appellant's factual showing disputed that Trustee's assertion of lack of cooperation with production of documents related to the Appellant's pre and post-petition business dealings with Liberty and her pre-petition personal business affairs.  The Appellant's factual showing further established the Appellant's age, cultural background, education, training, and experience in detail.  Thus, based on the record before the court below, the Order granting the Trustee Summary Judgment in this case is clear error under Rule 56.

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is only appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. See Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at

323.  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).  A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (*quoting* Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court below must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence.[2] *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

/ / /

/ / /

/ / /

---

[2]   To the extent that statements offered by either party are speculative or represent a legal conclusion, the court, as a matter of course, will not factor that material into the analysis. See *Burch v. Regents of the Univ. of Cal.*, 453 F.Supp. 2d 1110, 1119 ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and … will not be considered on a motion for summary judgment") (citation omitted, emphasis in original). Rather, the Court's analysis cites evidence only that it has deemed admissible.

# VII.

# CONCLUSION

For all of the reasons set forth hereinabove, Appellant respectfully requests that the Order of the bankruptcy court below denying the Appellant her discharge under 11 U.S.C. § 727(a)(3) be reversed and the matter remanded to the bankruptcy court below with Orders to enter the discharge of the Appellant under 11 U.S.C. § 727(a).  The bankruptcy court below failed to be bound by the clear dictates if controlling Ninth Circuit case law under 11 U.S.C. § 727(a)(3) and to take into consideration the uncontested circumstances of the Appellant's age, education, cultural background, and personal experiences in granting the Trustee's MSJ.  The record before the bankruptcy court below was insufficient to grant summary judgment given the clear facts and the controlling law.  The Appellant further seeks such other and further relief as this Court deems just and proper under the circumstances.

Dated: September 18, 2019             Respectfully submitted,

                                      JAMES ANDREW HINDS, JR.
                                      PAUL R. SHANKMAN
                                      RACHEL M. SPOSATO
                                      HINDS & SHANKMAN, LLP

                                      By:   /s/  James Andrew Hinds, Jr.
                                      JAMES ANDREW HINDS, JR.,
                                      Attorneys for the Appellant,
                                      TSAI LUAN HO aka SHELBY HO

## CERTIFICATE OF COMPLIANCE

(Federal Rule of Bankruptcy Procedure 8015(a)(7))

I, James Andrew Hinds, Jr., certify that:

Pursuant to Federal Rule of Bankruptcy Procedure 8015(a)(7), the foregoing brief, including the tables, contains 7,567 words, according to the word count performed by Microsoft Word, and therefore, it meets the requirements of Rule 8016(d)(2)(C).

Respectfully submitted this 18th day of September, 2019.

JAMES ANDREW HINDS, JR.
PAUL R. SHANKMAN
RACHEL M. SPOSATO
HINDS & SHANKMAN, LLP

/s/  James Andrew Hinds, Jr.
JAMES ANDREW HINDS, JR.

# CERTIFICATE OF SERVICE
## TSAI LUAN HO aka SHELBY HO v. ANDREA A. WIRUM, et a.
## Case No. 3:19-cv-02095-RS

I am employed in Torrance, California. I am over the age of 18 and not a party to this action; my business address is 21257 Hawthorne Blvd., Second Floor, Torrance, CA 90503.

I hereby certify that on September 18, 2019, I served **APPELLANT'S OPENING BRIEF** on the following parties or counsel of record:

### *SEE ATTACHED LIST*

X       To Be Served By the Court Via Notice of Electronic Filing (NEF/ECF): Pursuant to controlling General Orders and LBR, the foregoing document was served by the court via NEF and hyperlink to the document. On August 2, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determine that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below

X       By Placing the ___ original X an accurate copy in sealed envelope(s) to the notification address(es) of record and sending by:

X       Overnight Delivery: I arranged for the envelope(s) to be delivered by overnight delivery by close of business of the next business day. I am readily familiar with the firm's practice of collection and processing parcels for overnight carrier. They are deposited with the overnight carrier or at a location authorized to receive parcels on behalf of the overnight carrier on the same day, fully prepaid at Torrance, California in the ordinary course of business.

I declare under penalty of perjury and the laws of the State of California that the above is true and correct.

Executed on this 18th day of  September 2019, in Torrance, California

_____ /s/ Mayra Duran_____
MAYRA DURAN

# CERTIFICATE OF SERVICE
## TSAI LUAN HO aka SHELBY HO v. ANDREA A. WIRUM, et a.
## Case No. 3:19-cv-02095-RS


To Be Served By the Court Via Notice of Electronic Filing (NEF/ECF):

Charles P. Maher     cmaher@rinconlawllp.com

James Andrew Hinds , Jr     jhinds@jhindslaw.com, pshankman@jhindslaw.com

Rachel M. Sposato     rsposato@jhindslaw.com


Overnight Delivery:

District Judge Richard Seeborg
San Francisco Courthouse
450 Golden Gate Avenue
Courtroom 3 - 17th Floor
San Francisco, CA 94102