Charles P. Maher, State Bar No. 124748
RINCON LAW, LLP
200 California Street, Suite 400
San Francisco, CA 94111
Telephone No.: 415-840-4199
Facsimile No.: 415-680-1712
Email: cmaher@rinconlawllp.com

Counsel for Appellee,
Andrea A. Wirum,
Chapter 7 Trustee

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TSAI LUAN HO *aka* SHELBY HO,<br><br>          Appellant,<br><br>v.<br><br>ANDREA A. WIRUM, Chapter 7 Trustee,<br><br>          Appellee. | Case No. 3:19-cv-02095-RS<br>Hon. Richard Seeborg<br><br><br><br><br>Bankr. Case No. 18-30581 DM<br>Adv. Proc. Case No. 18-03051 |

**APPELLEE'S OPENING BRIEF**

1

2

# TABLE OF CONTENTS

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      STANDARD OF REVIEW ....................................................................................... 1

II.     STATEMENT OF ISSUES ....................................................................................... 1

III.    STATEMENT OF CASE ........................................................................................... 1

IV.     SUMMARY OF ARGUMENT ................................................................................. 4

V.      REFERENCES TO THE RECORD .......................................................................... 5

VI.     STATEMENT OF FACTS ........................................................................................ 5

VII.    ARGUMENT ........................................................................................................... 12

   A.   Standards for Granting Summary Judgment ........................................................ 12

   B.   The Trustee Was Entitled to Summary Judgment ............................................... 13

   1.   The Debtor Failed to Maintain Adequate Records ......................................... 17

   2.   The Debtor Did Not Justify Her Failure to Maintain Adequate Records ................... 19

   3.   The Debtor's Misleading Statements .............................................................. 19

VIII.   CONCLUSION ........................................................................................................ 21

1

**TABLE OF AUTHORITIES**

2

3 **Cases**

4 *Anderson v. Liberty Lobby, Inc.*,

5     477 U.S. 242, 251, 106 S.Ct. 2505, 2512 (1986) ........................................................ 12

6 *Balint v. Carson City*,

7     180 F 3d. 1047, 1054 (9th Cir. 1999) ............................................................................ 1

8 *In re Caneva*,

9     550 F 3d. 755, 761 (9th Cir. 2008) ...................................................................... passim

10 *In re Hong Minh Tran*,

11     464 B.R. 885 (Bankr. S.D. Cal. 2012) ................................................................... 16, 17

12 *Lujan v. National Wildlife Federation*,

13     497 U.S. 883, 110 S.Ct. 3177, 3188 (1990) ................................................................ 12

14 *Olsen v. Idaho State Bd. of Madison*,

15     363 F 3d. 916, 922 (9th Cir. 2004) .................................................................................. 1

16 *Olympic Coast Inv. v. Wright* (*In re Wright*),

17     364 B.R. 59 (Bankr. D. Mont. 2007) ........................................................................... 16

18 *Peterson v. Scott* (*In re Scott*),

19     172 F 3d. 959, 969 (7th Cir. 1999) ............................................................................... 15

20 *Rhoades v. Wikle*,

21     453 F 2d. 51, 53 [9th Cir. 1971] ................................................................................... 14

22 *Strzesynski v. Devaul* (*In re Devaul*),

23     318 B.R. 824 (Bankr. N.D. Ohio 2004) ...................................................................... 16

24 *Suzuki Motor Corp. v. Consumers Union, Inc.*,

25     330 F 3d. 1110, 1131 (9th Cir. 2003) .............................................................................. 1

26 *United States v. Grayson*,

27     879 F.2d 620 (9th Cir. 1989) ........................................................................................ 12

28

1

*Video Software Dealers Ass'n v. Schwarzenegger*,

556 F 3d. 950, 956 (9th Cir. 2009) ........................................................................ 1

**Statutes**

11 U.S.C. § 727(a)(3) ..................................................................................... passim

Business & Professions Code § 10148 ................................................................. 19

**Rules**

Fed. Rule Bankr. Proc. 7056 ................................................................................ 12

Fed. Rule Civ. Proc. 56 ................................................................................. 12, 21

Fed. Rule Civ. Proc. 56(c) ............................................................................... 1, 12

Fed. Rule Civ. Proc. 56(e) .................................................................................. 12

Federal Rule of Evidence 701 ............................................................................... 4

APPELLEE'S OPENING BRIEF

Appellee Andrea A. Wirum, Chapter 7 Trustee of the estate of Tsai Luan Ho in Case No. 18-30581 DM, files this brief in opposition to the opening brief of the Appellant on her appeal of the summary judgment entered against her by the United States Bankruptcy Court.

## I.   STANDARD OF REVIEW

An appealable order of the Bankruptcy Court on summary judgment is reviewed *de novo*. The appellate court's review is governed by the same standard used by the trial court under Rule 56(c) of the Federal Rules of Civil Procedure.  *See*, *Suzuki Motor Corp. v. Consumers Union, Inc.*, 330 F 3d. 1110, 1131 (9th Cir. 2003).

On review, the appellate court must determine, viewing the evidence in a light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the trial court correctly applied the relevant substantive law.  *See*, *Olsen v. Idaho State Bd. of Madison*, 363 F 3d. 916, 922 (9th Cir. 2004).  The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial.  *See*, *Balint v. Carson City*, 180 F 3d. 1047, 1054 (9th Cir. 1999).

Summary judgment may be affirmed on any grounds supported by the record.  *See, Video Software Dealers Ass'n v. Schwarzenegger*, 556 F 3d. 950, 956 (9th Cir. 2009).

## II.   STATEMENT OF ISSUES

Did the Bankruptcy Court err when it found that the Appellant had failed to identify a genuine issue of material fact on the question whether the Appellant had failed to preserve adequate records as required by 11 U.S.C. § 727(a)(3)?

Did the Bankruptcy Court err when it found that the Appellant had failed to justify her failure to preserve adequate records under 11 U.S.C. § 727(a)(3) and failed to justify the failure or establish a cultural exemption for the requirement?

## III.   STATEMENT OF CASE

A primary goal of an individual Chapter 7 debtor is to obtain a discharge of her or his debts under Section 727 of the Bankruptcy Code.  Not every debtor is entitled to a discharge, however, and Section 727 identifies circumstances under which debtors will be denied a discharge.  The Appellant in this appeal is one of those debtors. Section 727(a)(3) prohibits a discharge to a debtor

who has "failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case." 11 U.S.C. § 727(a)(3).

On undisputed facts, the Bankruptcy Court found that (a) the Appellant, Tsai Luan Ho (the "Debtor"), had failed to keep or preserve records sufficient for the Trustee to ascertain the Debtor's financial condition or business transactions in the three years before she filed for protection under Chapter 7, and (b) had failed to justify her failure.  As a result, the Bankruptcy Court granted the motion of the Appellee, Andrea A. Wirum, who is the Chapter 7 Trustee of the Debtor's estate (the "Trustee"), for summary judgment denying a discharge to the Debtor under 11 U.S.C. § 727(a)(3).

To obtain a discharge, a debtor must have contemporaneously kept records from which a creditor or trustee can understand the debtor's financial transactions.  The level of adequate record keeping is determined on a case-by-case basis: the less sophisticated the debtor, the lower the standard is; the more sophisticated the debtor, the higher the standard is.  The Bankruptcy Court found (and the Debtor admitted through her declaration and elsewhere) that the Debtor had engaged in sophisticated real estate transactions for years.  As a result, the Bankruptcy Court held the Debtor to a higher standard of record-keeping.

In spite of a clear record, the Debtor claims in her opening brief that she is unsophisticated. She is a licensed real estate broker who has been involved in numerous multi-million-dollar real estate transactions.  She lived in a 5,000 square-foot house in Atherton which she acquired through her business transactions and which she sold for $9.5 million in a related bankruptcy case shortly before she filed her bankruptcy petition.  She owned commercial real estate in San Jose that she also acquired through her business transactions and sold for $3 million shortly before she filed her bankruptcy petition.  Her primary asset in her asset schedule is an outstanding claim that she is still owed of $11.5 million for unpaid real estate commissions and profit-sharing participations.  In her opposition declaration, the Debtor opined that: "[t]he sale of distressed real estate assets and non-performing notes are very different from ordinary real estate practice.  Each transaction depends on the profit margin, selling level difficulty, and/or price to determine the profit." The Debtor is hardly

1   a stay-at-home mom.

2       The Trustee presented the Bankruptcy Court with the Debtor's sworn testimony that she did

3   not keep records.  She reiterated the testimony in her opposition declaration: "I testified that I did

4   not maintain an accounting or ledger on any known system such as Quick Books and did not

5   maintain an informal ledger on my own. This is true as to me and as to the business assets and

6   operations of Great Vista and Big Max."

7       The Debtor demonstrated that she is capable of maintaining detailed records when she needs

8   to do so: "I created a comprehensive record that shows monies (i.e., the $11.5 million) owed to me

9   for unpaid commissions."

10      The Bankruptcy Court correctly found that, for someone of her financial sophistication, the

11  Debtor had not maintained adequate records from which the Trustee could ascertain her financial

12  condition or business transactions during the prior three years.

13      The Debtor suggests that the pile of documents she provided to the Trustee was adequate for

14  the Trustee to ascertain her financial transactions.  She is incorrect.  The Trustee and her counsel

15  reviewed all of the records the Debtor provided, and could not determine how she accumulated large

16  amounts of cash or how she spent it.  Almost all of these records were presented to the Bankruptcy

17  Court.  The Bankruptcy Court saw what the Debtor produced and agreed with the Trustee that the

18  Debtor's financial condition or business transactions could not be ascertained from them.  The

19  Debtor's contention that the Trustee refused an offer of records is incorrect and not supported by

20  the record.  The Trustee did decline to meet again with the Debtor.  The Trustee or her counsel had

21  been present for four hours of testimony at the Appellant's mandatory meeting of creditors. That

22  testimony was not the equivalent of contemporaneous record keeping for the prior three years and

23  the Trustee did not see a need to sit with the Debtor again.

24      The Debtor's failure to meet the requirement of Section 727(a)(3) to maintain adequate

25  records was undisputed.  The burden then shifted to the Debtor to adequately justify her failure.

26      The Debtor attempted to justify her failure by asserting that her obligation to keep records

27  "must be judged against my education, culture, and regular practices."  However, she did not cite a

28  single case or any other legal authority to support that proposition.  The Bankruptcy Court found no

cultural exception to Section 727(a)(3) and concluded that the Debtor's explanation of her failure was irrelevant and inadequate.  In her opening brief, the Debtor raises the new argument that the Trustee had a burden to establish the level of record keeping to which a debtor from her culture is required to adhere.  There is no legal support for that proposition either.  The burden did not shift back to the Trustee; it remained with the Debtor.

The Debtor offered the declaration of her friend, Monica Arima, in opposition to the Trustee's motion.  The Debtor asserts retroactively that Ms. Arima was an expert and that the Bankruptcy Court erred by failure to consider Ms. Arima's declaration.  The Bankruptcy Court did consider the declaration; it was opinion testimony of a lay witness (FRE 701).  The Debtor did not lay a foundation for admission of Ms. Arima's declaration as expert testimony.  The Bankruptcy Court did not consider the declaration as expert testimony; there was no need for the Trustee to object to it because nothing in it showed the existence of a relevant factual dispute.  The Debtor barely mentioned Ms. Arima's declaration in her opposition memorandum. As the Bankruptcy Court noted at the hearing on the Appellant's motion for a stay pending appeal, "there wasn't any expert testimony from anyone" and "Ms. Arima's declaration was of no probative value for the ultimate questions that were presented."

The Bankruptcy Court carefully considered the record in the case, including everything the Debtor filed in opposition to the motion. Based on the record, the Bankruptcy Court found that the Debtor did not deserve a discharge.  There was no error and the summary judgment should be affirmed.

Throughout the Debtor's brief, she makes frequent untrue statements in an apparent attempt to create a phantom record on which to argue error on the part of the Bankruptcy Court.  She does not refer to anything in the record to support the statements because the statements have no support in the record. The Trustee will address most of those statements at the end of this answering brief.

## IV.    SUMMARY OF ARGUMENT

The Trustee filed a motion for partial summary judgment for denial of the Debtor's discharge under 11 U.S.C. § 727(a)(3) which prevents a discharge for a debtor who fails to "keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's

financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."  The Trustee demonstrated to the Bankruptcy Court that the Debtor had failed to keep adequate records in a manner commensurate with her financial sophistication.  The Debtor did not raise a genuine issue of material fact on her failure to maintain adequate records and the burden shifted to her to demonstrate that her failure was justified under the circumstances of the case.  The Debtor failed to justify her failure.  As a result, the Court granted the motion for partial summary judgment and judgment denying the Debtor's discharge under Section 727(a)(3) was entered.

The Trustee argues that summary judgment was warranted by the record and the Debtor's failure to raise any genuine issue of material fact.

## V.   REFERENCES TO THE RECORD

The Debtor has filed an Excerpt of Record that contains most of the relevant documents and the Trustee will refer to documents in the Debtor's Excerpt as "ER" with page numbers.  The Trustee has prepared a supplemental excerpt of record with one additional document entitled "Trustee's Appendix" which is referred to as "App" with page references.

## VI.   STATEMENT OF FACTS

On May 28, 2018, Tsai Luan Ho (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  Plaintiff was appointed Chapter 7 Trustee and continues to serve in that capacity.  ER 213.  The Debtor is or was the responsible individual in two Chapter 11 cases filed in January 2018: Big Max, LLC (Case No. 18-30031; "Big Max"); Great Vista Real Estate Investments, Inc. (Case No. 18-30032; "Great Vista").  ER 215, ¶¶13-14.

The first session of the meeting of creditors under Section 341 of the Bankruptcy Code was scheduled for June 26, 2018.  ER 215, ¶18.  Before the meeting, the Trustee asked the Debtor to provide certain documentation, including a complete accounting of the Debtor's substantial financial affairs in the years before she filed her Chapter 7 petition.  ER 219.  Counsel for the Debtor acknowledged the Trustee's request for documents.  ER 220-224.

On February 13, 2018, the Debtor testified as responsible individual in the Section 341 meetings for the associated Chapter 11 cases of Great Vista and Big Max about the financial affairs

of those two entities and the lack of distinction between them and herself.  ER 215, ¶¶14, 15; 225-233.  Great Vista held title to the Debtor's 5,000 square-foot residence in Atherton; with bankruptcy court approval in the Great Vista case the Debtor sold the residence for $9.5 million in April 2018. ER 266, P. 3.  With bankruptcy approval in the Big Max case, the Debtor sold commercial property in San Jose for $3 million in April 2018.  ER 266, P.5.

The June 26, 2018, meeting of creditors lasted for approximately two hours.  ER 215.  The Trustee continued the meeting until August 7, 2018.  ER 216, ¶19.  In the interim, the Trustee asked the Debtor to provide documents, including an accounting, before the continued meeting.  Through an accountant, the Debtor provided the following documentation in late July 2018: bank statements for accounts at HSBC Bank (2015, 2016, and 2017) and at JPMorgan Chase Bank (2017 and part of 2018), and some credit card statements (HSBC card, Nordstrom card, Saks card, and a Wells Fargo card).  ER 214, ¶5.

In addition to documents provided by the Debtor's accountant, counsel for the Debtor provided the following documents:

        (a)     A copy of the TFKM Family Trust;

        (b)     Two police reports;

        (c)     Documents relating to a $200,000 loan to Great Vista and an agreement for Great Vista receipt of $1.8 million and transfer of $1.6 million of it to an account in Taiwan for the benefit of the father of an acquaintance in 2016 and 2017; and

        (d)     Tax returns for 2015, 2016, 2017.

ER 216, ¶6.

A few bank statements had handwritten annotations on them, such as "loan" or "buy cashier's check" or "repayment to Vicky," [ER 868] but there were no check copies or deposit records with the statements and it was impossible to determine the source of deposits or the recipients of disbursements in 90 percent or more of the transactions. Later the Trustee received copies of 10 checks.  ER 214, ¶5.  The bank statements showed that the Debtor had moved hundreds of thousands of dollars through her accounts each year which she identified in her complaint:

        (a)     $2.1 million in 2015;

(b)     $400,000 in 2016;

(c)     $1,025,000 in 2017; and

(d)     $297,000 between January and May 2018.

ER 214, ¶; ER 215, ¶¶10-12.

In response to direct questions from the Trustee on August 7, 2018, the Debtor testified that she did not maintain an accounting or ledger on any known system such as QuickBooks and did not maintain an informal ledger on her own.  ER 216, ¶20.

The Trustee could not determine from the records provided how the Debtor managed to deposit hundreds of thousands of dollars every year when her tax returns reflect no wages or commissions for 2015, 2016, and 2017, and negative adjusted gross income.  ER 216, ¶21.  From the hundreds of pages of documents the Debtor provided, it was not possible to reconstruct the Debtor's financial affairs.  ER 217, ¶26.

The Debtor has been a licensed real estate broker since 2006.  ER 216, ¶22.  She has been involved in many very large real estate transactions as a broker or as a profit-sharing participant, including the sale of 220 Post Street in San Francisco (a $63.2 million transaction), and 100 South Second Street in San Jose (an $11 million transaction).  ER 216, ¶22; ER 267, ¶9; ER 835.  She admitted her involvement in large real estate and financial transactions in her answer to the Trustee's complaint, as the Bankruptcy Court noted in its Memorandum Decision [ER 48] and as the Debtor herself confirmed in her opposition declaration.  ER 851 - 860, ¶¶13-45.

The Trustee filed her Section 727 complaint on August 23, 2018. On October 29, 2018, the Debtor's counsel provided access to more documents through Drop Box.  ER 266-267, ¶8.  The Trustee and her counsel reviewed those documents. ER 217, ¶26; ER 266-267, ¶8.  The Trustee presented the entire production to the Bankruptcy Court.  ER 268-835.  Primarily, the documents are copies of bank statements and other documents with some hand-written annotations, most with vague references (e.g., "interest," "loan from June Chen," "wire in from Chen Ling," and "repayment loan to Vicky").  There was no explanation what these loans or payments were for, why they were made, or what happened with money the Debtor received.  The Debtor testified that she received many loans, but with a few exceptions, there is no loan documentation.  ER 268-835.

The Debtor testified at the Big Max and Great Vista creditor meetings that she did not keep records and that all of her transactions were done informally and orally and that, despite exchanges of millions of dollars over a three-year period, she maintained no record keeping.  ER 227-233.

In the Section 341 meeting in the Great Vista case on February 13, 2018, the following exchange took place among the Debtor, her attorney, and the attorney for the unsecured creditors committee in a Central District bankruptcy case:

> Mr. Hinds:        Do you have any records to show how the money was used [i.e. money lent to Great Vista or the Debtor]?

> Ms. Ho:        Oh, that's difficult.  I don't keep records, you know.  I can thinking, but most go to attorney fee and the mortgage payment.

> Ms. Greenwood:        But you don't have any records?

> Ms. Ho:        I don't even have for maybe five years, ten years.  I don't even do that record, yeah.

ER 228.

In the Big Max Section 341 meeting on February 13, 2018, the following exchange took place:

> Ms. Greenwood:        Do you have any kind of general ledger, any kind of financials for Big Max?

> Ms. Ho:        No, I don't know do financials.   You say financial statement? I don't know how to do that.

>         . . .

> Ms. Greenwood:        Do you have any kind of – and I already asked this, I think, but check register for the Big Max account that you said – and it was a Comerica account, check register?

> Mr. Hinds:        Do you have a check register, anything?

> Ms. Ho:        What's a check register?

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ms. Greenwood:    The hand-written lined items –

Ms. Ho:    No.  I am not that organized, yeah.  I don't have those really.  I don't have those, yeah.

ER 231-233.

In her own Section 341 meetings on June 26, 2018, and August 7, 2018, the Defendant repeatedly confirmed that she did not keep records on QuickBooks or on any other system and maintained no check register.  ER 216, ¶20.

The Trustee filed her motion for partial summary judgment on December 21, 2018.  In opposition to the motion, the Debtor filed her own declaration, the declaration of Monica Yeung Arima, and an opposition memorandum.  The Court held a hearing on the Trustee's motion on January 18, 2019, and took the motion under submission.  The transcript of the hearing is included in the Debtor's Excerpt of Record at pages 968-986.

On April 1, 2019, the Court issued its Memorandum Decision which appears in the Debtor's Excerpt of Record at pages 46-54.  The Bankruptcy Court ruled in favor of the Trustee and granted her motion for summary judgment on her first claim for relief under 11 U.S.C. § 727(a)(3).

The "Debtor does not dispute that these documents [i.e., documents provided by the Debtor to the Trustee] were not provided in any particular order (including chronological order) and do not constitute an accounting of Debtor's affairs."  ER 11.  "Specifically, [the Debtor] admitted that 'for many years [she] has been involved in large and sophisticated real estate transactions, and that from 2015 through 2018, she 'came into possession of large sums of money and disbursed large sums of money from her accounts."  ER 11.  Given the Debtor's sophistication, the Court found that the Debtor had an obligation to maintain some bookkeeping system but had failed to do so.  ER 51.

The Bankruptcy Court also found that the Debtor had failed to justify her failure to keep or maintain records.  ER 15.

> Debtor has been a licensed real estate broker since 2006. She has, for years, been involved in large and sophisticated transactions. She has participated, and received a commission, in transactions involving hundreds of thousands and sometimes millions of dollars. Reasonable persons in similar circumstances would have some method of bookkeeping in place to track the flow of funds in order to accurately

9

ascertain their financial position. While there is not any magic formula or precise guideline for assembling the record to establish a successful defense of a discharge challenge, here Debtor has offered nothing of meaningful substance to even approach a reasoned explanation.

Nor has debtor has provided compelling justification for why no meaningful and useful records were kept. Instead, she relies on her "culture, education, and business experiences" as reasons for why she did not maintain records, nearly all of which is immaterial. Debtor asserts that it is common practice in Chinese culture for large sophisticated deals to be documented "informally or not at all." One point that court finds particularly troubling is that Debtor asserts, as a justification for not maintaining records, that "[she] has no formal training in business matter[] and business bookkeeping." If anything, that justifies the need to hire a bookkeeper or use some sort of bookkeeping software to do for her what she claims she could not do for herself.

ER 15 – 16.

The Debtor filed her notice of appeal and then filed a motion for a stay pending appeal. App 961. In her motion for a stay, the Debtor characterized the Arima Declaration as an expert declaration for the first time. Ms. Arima's declaration had barely been mentioned in the Debtor's opposition to the motion for summary judgment. App-007. Her declaration was not offered as expert testimony and the Court considered it as testimony of a lay witness as the Court made clear at the June 7, 2019, hearing.

The Court:    I'm going to make a comment for you before I hear from other counsel about Ms. Young – Ms. Arima's declaration. Ms. Arima's declaration of course was before me on the motion, was in the record. And when I – when I read your motion here today or yesterday, I saw it, I don't recall every single thing that I had done in a prior matter, but I thought, well, that's interesting. What is it that maybe I missed about what Ms. Arima had to say. And I went back and took a shortcut. Rather than dig up Ms. Arima's declaration and read it, first I did a word search in your motion. And – and I found all of two references in your papers to Ms. Arima's lengthy declaration that seems to cover every topic. And those two paragraphs were in her declaration, 17 and 18. And 17

|   |   |
|---|---|
| | talked about information that was delivered to the Drop Box, and then 18 on a similar subject. |
| | And so I am wondering if this all turns on Ms. Arima's familiarity with Asian culture, assuming that she has the qualification to opine on it, it wasn't even highlighted in your argument. |
| | So it's awful difficult for me to say that there is a likelihood of prevailing because – on appeal because in a declaration that was by an unqualified expert on every subject, - I mean she seems to be an expert on: Culture; on language; on Ms. Ho's familiarity with documents; on the standards of the Bankruptcy Code for maintaining the books and records; and her raising of her children, which of course is important. And like, well, what's going on. This is a strange way to – to make your case. But why do you think you are likely to prevail on the appeal based on Ms. Arima's declaration, with no law – |
| Mr. Hinds: | Well, Your Honor, it is the – |
| The Court: | -- no law cited as to why cultural backgrounds go to the standards of a section of 727? |

App-006 to App-008.

Later in the hearing, the Bankruptcy Court specifically stated that "Ms. Arima's declaration had no probative value on the ultimate questions that were presented." App-020. The Bankruptcy Court also reiterated that the Debtor had failed to demonstrate the existence of a genuine issue of material fact.

|   |   |
|---|---|
| The Court: | It's taking the facts and deciding what's material, right? |
| Mr. Maher: | That – well, that's correct. And what – the facts that the Trustee presented were not in dispute. And the two declarations – |
| The Court: | Well, that's what I recall specifically, yes. |
| Mr. Maher: | And the two declarations were about 99 percent irrelevant. And so that may be |

1

2

> counsel's fault, but that's the way the ball
> bounces. If it wasn't well argued it wasn't well
> argued. And the record can't be changed now.

3

4

App-011 – App-012.

5

**VII.   ARGUMENT**

6

    **A.   Standards for Granting Summary Judgment**

7

       Rule 56 of the Federal Rules of Civil Procedure, which is made applicable in bankruptcy

8

adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that

9

summary judgment shall be granted when there is no genuine issue of material fact and the moving

10

party is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56.  A party seeking summary

11

judgment must first establish by reference to the pleadings, judicially noticed matters, or discovery

12

responses that there are no genuine disputes concerning material facts upon which a claim or defense

13

lies, and that the moving party is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56(c).

14

If the movant makes this showing, the burden shifts to the respondent to come forward with evidence

15

in specific and admissible form, to demonstrate that a triable issue of material fact exists.  Fed. Rule

16

Civ. Proc. 56(e).  The Trustee made her showing and the burden shifted to the Debtor.

17

       A triable issue exists when material facts specifically averred by the movant are contradicted

18

by facts specifically averred by the respondent.  *Lujan v. National Wildlife Federation,* 497 U.S.

19

883, 110 S.Ct. 3177, 3188 (1990).  If the respondent presents controverting evidence, the court must

20

then determine if the evidence is sufficient, considering the facts in light of the applicable standard

21

of proof, to permit a reasonable jury to resolve the issue in the respondent's favor.  *Anderson v.*

22

*Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2512 (1986).  In doing so, the respondent is

23

entitled to have all reasonable inferences drawn in its favor.  *Lujan,* 110 S.Ct. at 3188.  The court

24

need not ignore the entirety of the record in determining whether an inference is reasonable, or

25

whether the evidence is sufficient to meet the applicable burden.  *United States v. Grayson*, 879

26

F.2d 620 (9th Cir. 1989) (although noting that some conflicting evidence was adduced, the court

27

affirmed summary judgment because no rational trier of fact considering the entirety of the record

28

could have resolved the issue in respondent's favor).

1    The Debtor did not demonstrate the existence of a triable issue of material fact.

2    **B.    The Trustee Was Entitled to Summary Judgment**

3        The Trustee asserted two claims for relief in her complaint: (1) denial of discharge for failure

4    to keep or preserve any recorded information, including books, documents, records, and papers, and

5    from which the Debtor's financial condition or business transactions might be ascertained (11

6    U.S.C. § 727(a)(3)) and (2) denial of discharge for failure to explain satisfactorily any loss of assets

7    or deficiency of assets to meet the Debtor's liabilities (11 U.S.C. § 727(a)(5)).  The Trustee moved

8    for an order granting her summary judgment on her First Claim for Relief under Section 727(a)(3).

9    The Bankruptcy Court granted the motion.

10       The Ninth Circuit has stated that "the purpose of § 727(a)(3) is to make discharge dependent

11   on the debtor's true presentation of his financial affairs."  *In re Caneva*, 550 F 3d. 755, 761 (9th Cir.

12   2008).  "The disclosure requirement removes the risk to creditors of the 'withholding or concealment

13   of assets by the bankrupt under cover of a chaotic or incomplete set of books or records.'"  *Id.*

14
15           The statute does not require absolute completeness in making or
             keeping records.  [citation omitted]  Rather, the debtor must "present
16           sufficient written evidence which will enable his creditors reasonably
             to ascertain his present financial condition and to follow his business
17           transactions for a reasonable period in the past."  [citation omitted]
             This exception to dischargeability, however, "should be strictly
18           construed in order to serve the Bankruptcy Act's purpose of giving
             debtors a fresh start."  [citation omitted]
19
20           A plaintiff states a prima facie case under Section 727(a)(3) by
             showing that (1) the debtor failed to maintain and preserve adequate
21           records and (2) that such failure makes it impossible to ascertain the
             debtor's financial condition and material business transactions.
22           550 F 3d. at 761.

23           After the plaintiff shows inadequate or non-existent records, the
             burden then shifts to the debtor to justify the inadequacy or non-
24           existence of the records.

25
     550 F 3d. at 261.
26
27       The Debtor, like Mr. Caneva, was involved in very sophisticated business transactions

28   involving millions of dollars.  Like Mr. Caneva, the Debtor dumped disorganized records on the

Trustee's doorstep, in effect challenging the Trustee to figure out the Debtor's financial affairs.

> Caneva argues that because he turned over a substantial quantity of documents to both the bankruptcy trustee and son [the plaintiff creditor], a genuine issue of material fact necessarily exists as to whether these documents were adequate to determine his financial condition and business transactions notwithstanding his admission that he has no records for some of his business entities. *Caneva* further contends that because son could have obtained information about Bowden from the public record generated by her criminal prosecution, the District Court erred in finding that his admission that he had no records related to the payment of $500,000 to Bowden established a violation of § 727(a)(3).

> We disagree.  The Seventh Circuit has held that § 727(a)(3) "places an affirmative duty on the debtor to create books and records accurately documenting his business affairs." [citation omitted]  The Court also noted that when a debtor is sophisticated and carries on a business involving substantial assets, "creditors have an expectation of greater and better record keeping." [citation omitted]

550 F 3d. at 761-762.

The Ninth Circuit found that Mr. Caneva owned or controlled numerous business entities, owned an aircraft, and had substantial assets and therefore had a heightened obligation to maintain complete records.  The Ninth Circuit found that Mr. Caneva had failed to do so.  The Bankruptcy Court found that *Caneva* was controlling, that the Debtor was a sophisticated business person, and had failed to keep or preserve records adequate to enable the Trustee to ascertain the Debtor's financial condition.

Section 727(a)(3) does not require absolute completeness in making or keeping records (citing *Rhoades v. Wikle*, 453 F 2d. 51, 53 [9th Cir. 1971]), but "the debtor must 'present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past.'"  550 F 3d. at 661.

"A creditor states a *prima facie* case under Section 727(a)(3) by showing (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions."  550 F 3d. at 761.

Like the Debtor in this appeal, Mr. Caneva argued that, because he had turned over a substantial quantity of documents to the bankruptcy trustee and a creditor, a genuine issue of material fact necessarily existed as to whether the documents were adequate to determine his financial condition and business transactions.  550 F 3d. at 761-762.  The Ninth Circuit rejected Mr. Caneva's arguments.  Citing a Seventh Circuit decision, *Peterson v. Scott* (*In re Scott*), 172 F 3d. 959, 969 (7th Cir. 1999), the Ninth Circuit stated that Section 727(a)(3) places an affirmative duty on the debtor to create books and records accurately documenting his business affairs.  550 F 3d. at 762.  When a debtor is sophisticated and carries on a business involving substantial assets, creditors have an expectation of greater and better record keeping.  550 F 3d. at 762.

> Caneva has asked Sun [the creditor who filed the Section 727 action], the Bankruptcy and District Courts, and now this Court to disregard the affirmative duty that § 727(a)(3) imposes on a debtor to keep and preserve records, take him at his word that he has no records because there was nothing to record, and focus instead on what might be learned from the boxes of records he did keep and eventually offered to the Bankruptcy Court.  In other words, he says that if there is a needle in this haystack, it is up to the Court to find it.

550 F 3d. at 762.

> As the Third Circuit has stated "'[c]omplete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.'"  *Meridien Bank*, 958 F 2d. at 1230 (quoting *In re Underhill*, 82 F 2d. 258, 259-60 (Second Cir. 1936))  Without the records that Caneva admitted he did not keep, Sun cannot determine what assets his business entities held or may still hold, what assets passed through them and where they might have gone, and what their present value is, if anything.  Without any documentation related to the payment to Bowden, Sun cannot determine the details of that transaction or verify that it actually took place.

550 F 3d. at 762.

The Debtor admitted under oath on three occasions that she had been involved in sophisticated real estate and financial transactions.  She made the same admission throughout her opposition declaration.  ER 848-870.

The Debtor cites a number of bankruptcy cases on Section 723(a)(3) that pre-date *Caneva*, are from districts outside the Ninth Circuit, or do not support the Debtor's position.  The Debtor relies heavily on *Olympic Coast Inv. v. Wright* (*In re Wright*), 364 B.R. 59 (Bankr. D. Mont. 2007). *Olympic Coast* pre-dates *Caneva* and to the extent it is inconsistent with *Caneva* it is not good law. As the Trustee has made clear, the determination of what is adequate record keeping is made on a case-by-case basis.  The Debtor repeatedly and incorrectly suggests that the Trustee in her case did not review the documents that were provided by the Debtor and did not inform the Court of her conclusion that they were insufficient for her to ascertain the Debtor's financial transactions. Neither suggestion is true.  The Trustee or her counsel reviewed every single document provided by the Debtor and communicated that fact to the Bankruptcy Court in the Trustee's motion.  Unless the Debtor has withheld documents, she has provided everything she has had and the Trustee reviewed all of it; the Trustee filed virtually all of it in support of her motion. The Bankruptcy Court determined that for a debtor with her high level of sophistication in major real estate transactions, the records were inadequate.

The Debtor cites *Strzesynski v. Devaul* (*In re Devaul*), 318 B.R. 824 (Bankr. N.D. Ohio 2004).  The *Devaul* case is from outside the Ninth Circuit, pre-dates *Caneva,* and has no bearing in the present case unless the Debtor is suggesting that *Devaul* trumps the Ninth Circuit's binding opinion in *Caneva*.

The Debtor cites *In re Hong Minh Tran*, 464 B.R. 885 (Bankr. S.D. Cal. 2012), which the Trustee addressed in her reply memorandum.  ER 926-927.  The Debtor cites *Hong Minh Tran* for the proposition that a debtor's duty to keep records is measured by the type of debtor and the debtor's sophistication.  The Trustee has no quarrel with that proposition and believes the *Hong Minh Tran* case supported her motion for summary judgment; it makes no mention of culture as a measure.  As the *Hong Minh Tran* Court noted, Mr. Tran sold assets to unnamed parties for amounts that appeared to be grossly inadequate.  His failure to maintain records of those transactions made it impossible for creditors or his trustee to recover transfers or identify potential recipients of avoidable fraudulent transfers.  The *Tran* Court made the following statement:

> Mr. Tran's creditors are entitled to evaluation of and attempted recovery on account of these transactions under the California Uniform Fraudulent Transfer Act or Section 548 [of the Bankruptcy Code]. But Mr. Tran's record keeping failures make recovery, or in some cases even the determination of a probable defendant, impossible or improbable.

464 B.R. at 895.

Mr. Tran was denied a discharge. The Debtor's failure to maintain adequate records has put her creditors and the Trustee in the same impossible position as Mr. Tran did.  Like Mr. Tran, the Debtor is not entitled to a discharge.

### 1.    The Debtor Failed to Maintain Adequate Records

The documents provided by the Debtor comprise bank statements and other statements with numerous, but inadequate, annotations of the purpose of certain deposits and receipts.  Other documents purport to document transactions with Benny Kirk.  Those are incomplete as well.  No one can take the bag of documents provided by the Debtor and make sense of her pre-petition financial affairs or her financial condition on the petition date.  The fact that $2.1 million cycled through her accounts in 2015, $400,000 in 2016, $1,025,179 in 2017, and $292,562 in the first five months of 2018 shows that the Debtor controlled hundreds of thousands of dollars a year.  The cash flow disappeared when she filed her Chapter 7 petition.  ER 216, ¶22.  The documents provided by the Debtor did not enable the Trustee to follow the money.

The Debtor has been a licensed real estate broker since 2006.  She engaged in numerous transactions by which acquaintances or others lent or invested millions of dollars in enterprises organized by Liberty Asset Management and, it is alleged, the Debtor.  Among those projects were the following, which she mentioned in either the Great Vista Section 341 meeting or the Big Max Section 341 meeting or in both, or the sales which were approved by the Bankruptcy Court in the two related bankruptcy cases:

(a) The sale of 220 Post Street, San Francisco, California for $63.2 million;

(b) The sale of 100 South 2nd Street, San Jose, California for $11 million;

(c)   The acquisition of the two business condos at 88 San Fernando Avenue in San Jose, California (adjacent to the 100 South 2nd Street property) and its subsequent sale in the Big Max Chapter 11 case for $3 million;

(d)   The acquisition of 126 Atherton Avenue, Atherton, California as her personal residence (buyer was Great Vista) and the subsequent sale of that property for $9.5 million in the Great Vista Chapter 11 case.

ER 216, ¶22; ER 266, ¶¶2-4.

Section 10148 of California Business and Professions Code provides that "a licensed real estate broker shall retain for three years copies of all listings, deposit receipts, cancelled checks, trust records, and other documents executed by him or her or obtained by him or her in connection with any transactions for which a real estate broker license is required.  Failure to maintain such records is grounds for license suspension or revocation by the Bureau of Real Estate."

The Debtor was earning real estate commissions and expecting money in profit sharing from real estate transactions in connection with her services.  The Debtor has admitted that she did not keep records, and did not maintain an accounting or bookkeeping system, despite the huge amounts of money with which she dealt, year in and year out.  Her Drop Box submissions do not constitute an accounting.  The document dump through Drop Box is the legal equivalent of giving the Trustee shopping bags full of fragmentary documents, similar to the boxes of records in *Caneva*.

Based on what the Debtor provided, the Trustee found it impossible to determine what the Debtor was doing with money deposited in her accounts.  The Trustee found it impossible to determine the basis on which disbursements were made from her accounts.  The Debtor's pre-petition business transactions remain a complete mystery.

Like Mr. Caneva in the Ninth Circuit case cited above, the Debtor asked the Bankruptcy "Court to disregard the affirmative duty that § 727(a)(3) imposes on a debtor to keep and preserve records, … and focus instead on what might be learned from the boxes of records he did keep and eventually offered to the Bankruptcy Court." 550 F 3d. at 762.  "In other words, he says that if there is a needle in his haystack, it is up to the Court to find it." *Id.*

1

      **2.**      **The Debtor Did Not Justify Her Failure to Maintain Adequate Records**

2

      The Trustee made a *prima facie* showing that (a) the Debtor had failed to keep or preserve

3
records, and (b) that the failure has made it impossible for the Trustee to ascertain the Debtor's

4
financial condition and material business transactions.  The Trustee's showing shifted the burden to

5
the Debtor to establish that her failure to keep or preserve records was justified.  The Debtor failed

6
to justify her failure.

7

      The Debtor is not a simple wage earner whose poor record keeping can be excused.  She is

8
a sophisticated, wealthy individual who engaged in numerous very substantial transactions.  As a

9
sophisticated businesswoman, she is subject to a higher standard.  "When a debtor is sophisticated

10
and carries on a business involving substantial assets, creditors have an expectation of greater and

11
better record keeping."  550 F 3d. at 762.  Furthermore, state law requires persons in her profession

12
to maintain records.  Business & Professions Code § 10148.

13

      The Bankruptcy Court found the Debtor had failed to provide a justification for why no

14
meaningful and useful records were kept. "Instead, she relies on her 'culture, education, and

15
business experiences,' nearly all of which is immaterial."  The "Debtor's alleged justifications are

16
untenable … ."  ER 15.

17

      The Debtor had a duty to maintain adequate records so that her financial affairs could be

18
understood by the Trustee.  She failed to maintain adequate records and was unable to justify her

19
failure.

20

      **3.**      **The Debtor's Misleading Statements**

21

      As the Trustee indicated on page 4 above (lines 20-23), the Debtor has made a number of

22
untrue statements to disparage the Trustee.

23

      In the first paragraph on page 2 of the Debtor's brief, the Debtor states without a reference

24
to the record that she "offered the Trustee unfettered review of her personal papers developed pre-

25
and post-petition to document her personal business dealings" and the "Trustee refused the

26
opportunity … ."  The statement is untrue.  The Debtor provided documents to the Trustee in July

27
2018 and again in late October 2018 (two months after the Trustee filed the Section 727 complaint).

28
The Debtor did not offer "unfettered review" of personal papers.  She only offered to meet with the

Trustee to "explain" certain transactions just as she had done at the Section 341 meetings. Nothing in the record shows an offer of "unfettered" access to the Debtor's personal papers.

In the first paragraph on page 5 of the Debtor's brief, the Debtor states that her two entities, Great Vista and Big Max, "were placed into Chapter 7 cases" and their real property assets were sold, and then that "the net sales proceeds of the liquidation of these two properties were deposited with Appellant's Chapter 7 Trustee pursuant to Court order." How counsel could have the facts so wrong is perplexing given his firm's representation of Great Vista, Big Max, and the Debtor. Counsel filed Chapter 11 petitions for Great Vista and Big Max; both Chapter 11 debtors were under the Debtor's control. When the Debtor's residence (owned by Great Vista) was sold, there were no net proceeds and Great Vista's case was dismissed on the motion counsel prepared. In Big Max, the real property was sold and net proceeds of approximately $350,000 were held by Big Max until the counsel filed a motion to voluntarily convert the Big Max case to Chapter 7. Another Chapter 7 trustee was appointed and had control over the net proceeds. Three months after conversion of the Big Max case to Chapter 7, the Trustee obtained an order of the Bankruptcy Court "substantively consolidating" the Big Max estate into the Debtor's estate; in September 2018 the Trustee obtained possession of the net sale proceeds.

On page 7 of the Debtor's brief, in the final paragraph, the Debtor states that she "and her counsel offered to, and in fact provided the Trustee with additional documents," and in the following sentences "these offers were well documented and summarily rejected by the Trustee and her counsel." These sentences cannot be reconciled with each other. If something is offered and provided, the offer can hardly be rejected. As is clear throughout the entire record, the Trustee and her counsel reviewed every single document the Debtor provided.

In the last three lines of page 7 of the Debtor's brief, the Debtor states with emphasis that "the Trustee never met with the Appellant and never reviewed the supplemental data collected in response to the Trustee's request for additional documentation." The record references do not support this sentence. The Trustee has explained why she declined to meet with the Debtor. The statement that the Trustee "never reviewed the supplemental data" is false and is belied by the record in the case. The Trustee and her counsel reviewed everything and there is no citation to the record

1  for the Debtor's untrue statement.

2  **VIII.   CONCLUSION**

3         The Trustee met her burden to demonstrate that no genuine issue of material fact existed on

4  the question whether the Debtor had failed to maintain adequate records and that the failure made it

5  impossible for the Trustee to discern the Debtor's financial affairs and condition.  The Trustee also

6  demonstrated that there was no genuine issue of material fact regarding the Debtor's failure to justify

7  her failure to maintain adequate records given her high level of business sophistication.

8         The Trustee met the standards required under Rule 56 and applicable case law for granting

9  the motion for summary judgment.  The record demonstrates that the Bankruptcy Court's ruling was

10  correct.  The District Court should affirm the judgment.

11

12  DATED:  September 30, 2019          RINCON LAW, LLP

13

14                               By:  */s/Charles P. Maher*_____
                                    Charles P. Maher
15                                   Counsel for Appellee,
                                    Andrea A. Wirum, Chapter 7 Trustee
16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF COMPLIANCE WITH RULE 8015(a)(7) AND RULE 8015(b)**

       The Appellee's Opening Brief does not exceed 30 pages and contains 7,611 words and no more than 1,300 lines of text.

DATED:  September 30, 2019      RINCON LAW, LLP


                By: */s/Charles P. Maher*_____
                    Charles P. Maher
                    Counsel for Appellee,
                    Andrea A. Wirum, Chapter 7 Trustee